UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

SHANNAN C.,[1]

      Plaintiff,

   v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

Case No. 6:18-cv-00625-CL

OPINION AND ORDER

CLARKE, Magistrate Judge:

Plaintiff Shannan C. seeks judicial review of the final decision of the Commissioner of the

Social Security Administrations denying her applications for disability insurance benefits ("DIB")

under Title II and for supplemental security income ("SSI") under Title XVI of the Social Security

Act ("the Act"). Full consent to magistrate jurisdiction was entered on October 18, 2019 (#16).

For the reasons below, the Commissioner's decision is REVERSED and REMANDED for

immediate payment of benefits.

## BACKGROUND

Born November 15, 1979, Plaintiff was thirty-four years old on the alleged onset date. Tr.

24. She completed two years of college coursework. Tr. 344. She served active duty in the U.S.

Navy from August 1997 until discharged under honorable conditions in December 1998 for

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

"personality disorder." Tr. 321, 471. She has past relevant work experience as a pizza baker, pizza deliverer, and automobile salesperson. Tr. 24.

In September 2014, Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income, alleging disability beginning February 9, 2014. Tr. 258-72. The agency denied the claims both initially and upon reconsideration, and Plaintiff requested a hearing. Tr. 159-63, 165-81. She appeared pro se for a hearing before ALJ John Sullivan in March 2017, at which time she voluntarily continued the hearing to obtain a representative. Tr. 87-94, 217. She appeared with a representative for a hearing before ALJ Ted Neiswanger in October 2017. Tr. 38-86. On November 9, 2017, the ALJ issued a decision denying Plaintiff's claims for benefits. Tr. 10-32. Plaintiff requested review of the hearing decision, which the Appeals Council denied in February 2018. Tr. 253-54, 1-6. Accordingly, the ALJ decision became the final decision of the agency from which Plaintiff seeks review.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

    1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving

significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues.

    a.  At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.  Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.  Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

Applying the five-step analysis, the ALJ made the following findings:

1. Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2015. Tr. 15.

2. Plaintiff has not engaged in substantial gainful activity since February 9, 2014, the alleged onset date. Tr. 15.

3. Plaintiff has the following severe impairments: posttraumatic stress disorder (PTSD), and bipolar disorder. Tr. 15.

4. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 16.

5. Plaintiff has the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations. She is limited to simple, routine work tasks involving no interaction with the public and minimal superficial interaction with coworkers. She must work mostly independently and cannot have work-related interactions with coworkers. She is limited to low stress work, which is further defined as no persuasive communication tasks, no teamwork tasks, no fast-paced production pace work, and few changes in work routine or setting. Tr. 18.

6. Plaintiff is unable to perform any past relevant work as a pizza baker, pizza deliverer, or a salesperson (automobiles). Tr. 23-24.

...

10. Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including cleaner II (transportation vehicles), laundry sorter, and inspector hand packager. Tr. 24-25.

Consequently, the ALJ concluded Plaintiff is not disabled as defined by the Act. Tr. 25.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *See also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence' means 'more than a mere scintilla but less than a preponderance,' or more clearly stated, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Where the evidence before the ALJ is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not

invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff presents the following issues:

1. Did the ALJ properly evaluate the medical source opinions of Lance Portoff, Ph.D., and Scott Alvord, Psy.D.?

2. Did the ALJ give proper weight to the VA disability determination?

3. Did the ALJ properly evaluate Plaintiff's subjective symptom testimony?

The Court finds that the ALJ erred in all three ways, and for the reasons below, the case is reversed and remanded for immediate payment of benefits.

## I.    The ALJ failed to properly reject Plaintiff's two examining medical opinions.

Plaintiff challenges the ALJ's weighing of the medical opinion evidence of record. In social security cases, there are three categories of medical opinions: those that come from treating, examining, and non-examining doctors. *Holohan*, 246 F.3d at 1201. "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* at 1202. Opinions supported by explanations are given more authority than those that are not, as are opinions of specialists directly relating to their specialties. *Id.* [2]

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by

---

[2] The Court notes that the Commissioner has promulgated new regulations for evaluating medical opinion evidence for claims filed on or after March 27, 2017. See 20 C.F.R. §§ 404.1520c, 416.920c. However, for claims filed before March 27, 2017, the regulations at 20 C.F.R. §§ 404.1527, 416.927 apply.

substantial evidence." *Id.* (quoting *Bayliss*, 427 F.3d at 1216); *see also Reddick*, 157 F.3d at 725 ("[The] reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion."). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted).

### a. Examining psychologist Lance Portnoff, Ph.D., ABN

Lance Portnoff, Ph.D., ABN, performed a consultative psychological evaluation in November 2014. Tr. 552. Dr. Portnoff based his opinion on a review of available records, clinical interview, and mental status examination. Tr. 552-55. He recorded that Plaintiff "arrived significantly late" for the exam and was an adequate historian. Tr. 552. Plaintiff reported that her mother was a heroin addict; she lived with her grandmother most of her childhood. Tr. 552-53. She described a childhood history of sexual and mental abuse. Tr. 553. She witnessed and had been victim to domestic violence. Tr. 553. She had been raped while serving in the U.S. Navy. Tr. 553. She experienced intrusive memories of abuse and rape, social anxiety, hypervigilance, and panic attacks in public. Tr. 553. She described recurrent depression, vegetative symptoms of apathy, anhedonia, and asociality. Tr. 553. She reported a history of methamphetamine use, with her last use in February 2014. Tr. 554. She had last experienced suicidal ideation several months prior. Tr. 553. She had participated in counseling for three years after her husband died. Tr. 553. Although she denied discrete mania, Dr. Portnoff observed manic symptoms during the evaluation. Tr. 553. Plaintiff endorsed auditory hallucinations. Tr. 553. She was independent in personal hygiene but lacked motivation to perform those tasks. Tr. 554. She could manage money, travel alone, and prepare meals. Tr. 554.

During the exam, Plaintiff demonstrated adequate concentration, persistence, and pace, but some psychomotor slowing. Tr. 554. Dr. Portnoff noted moderate rambling and mildly tangential speech; moderate, agitated, tearful affect; and delayed recall. Tr. 554. He diagnosed unspecified bipolar disorder, most recent episode mixed, moderate; PTSD; and meth abuse disorder in full remission. Tr. 555. He noted that Plaintiff presented with mixed manic and depressive signs. Tr. 555. Examination indicated a thought disorder but provided insufficient evidence to diagnose borderline personality disorder. Tr. 555. Dr. Portnoff opined that Plaintiff's prognosis was fair, depending on access to medication and abstinence from drugs. Tr. 555. He assessed marked limitation in the ability to interact with coworkers and the public. Tr. 556. He assessed moderate limitation in the ability to perform detailed and complex tasks, maintain regular attendance in the workplace, and deal with stress encountered in a competitive work environment. Tr. 556. He opined that Plaintiff could not manage her own funds independently. Tr. 556.

The ALJ afforded "some weight" to Dr. Portnoff's opinion. Tr. 21. This was an error. Dr. Portnoff's opinion was consistent with the medical record, consistent with Plaintiff's testimony, and consistent with his own clinical findings. The ALJ did not identify any conflicting clinical evidence other than an opinion by a reviewing physician, which is not sufficient to discount the opinion of an examining physician.

First, as noted above, a physician who examines the claimant is generally due greater weight than that of a reviewing doctor. The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995), *as amended* (Apr. 9, 1996) (citations omitted). In this case, the ALJ afforded greater weight to the conclusions of Celene Payne-Gair, Ph.D., a state agency consultant who based her opinion on a review of the

medical record in March 2015. Tr. 23, 132-35. This was an error. Dr. Payne-Gair never examined Plaintiff, and her opinion was based on a partial review of the record.

Additionally, there is medical evidence in the record that supports Dr. Portoff's opinion and undermines Dr. Payne-Gair's opinion: Dr. Alvord examined Plaintiff in August 2017 with similar findings to those of Dr. Portnoff, as discussed in the section below. The ALJ declined to address the consistency between these two consultative examinations, which the agency ordered specifically to determine the severity and limiting effects of Plaintiff's mental impairments. Instead, the ALJ rejected those doctors' opinions, both of whom assessed disabling limitations, largely with the general finding that the opinions were inconsistent with the "medical evidence of record." Given that two consultative examiners reached similar diagnostic impressions from evaluations performed nearly three years apart, and given the lack of contradictory medical opinions, the ALJ's conclusory finding is problematic.

Second, the ALJ failed to explain how Plaintiff's reported activities conflicted with Dr. Portnoff's opinion. Tr. 21. Elsewhere in the opinion, the ALJ took issue with Plaintiff's ability to care for children "and spouse, a task that is quite demanding, both physically and emotionally." Tr. 21. Notably, Plaintiff had four children, but only the youngest was in her custody. Tr. 51. The record provides few details as to what her regular childcare activities involved, and there is no evidence that her ability to care for children in her home conflicted with Dr. Portnoff's opinion that she suffered marked limitation in the ability to interact with coworkers and the public and moderate limitation in the ability to maintain regular attendance in the workplace and deal with stress encountered in a competitive work environment. Tr. 556. In particular, the only testimony elicited by the ALJ on the subject of childcare is the following exchange:

> Q How's your baby doing?
> A My baby's great.

Q Good. Okay. Imagine that she keeps you busy, but you wouldn't trade, right?
A True.
Q Okay. All right. All right. I want to go back before the point where your grandmother died . . .

Tr. 51. Absent specific details about Plaintiff's childcare responsibilities, caring for an infant[3] cannot constitute 'substantial evidence' inconsistent with Dr. Portnoff's informed opinion, and thus the ALJ improperly relied on Plaintiff's childcare activities to reject the physician's opinion. *See Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) ("The ALJ did not develop a record regarding the extent to which and the frequency with which [the plaintiff] picked up the children, played with them, bathed them, ran after them, or did any other tasks that might undermine her claimed limitations, nor did the ALJ inquire into whether [the plaintiff] cared for the children alone or with the assistance of her... other family members.").

Finally, Dr. Portnoff's opinion was consistent with his own clinical findings. The ALJ discounted these findings because "they appear to be based on the claimant's subjective reports, and such excessive limitations are not consistent with the record as a whole." The Ninth Circuit has held that a physician's "opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (internal citations omitted). However, the Ninth Circuit has also held that, in the case of mental illness:

> "[t]he report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology...."

---

[3] The Commissioner also argues that a single treatment note indicating that Plaintiff "successfully bottle and breastfed her child" supports the ALJ's finding that the care Plaintiff provided to her infant and her husband was "a task that is quite demanding, both physically and emotionally." Tr. 21. First, the ALJ did not cite to this note or discuss this activity. Second, while the Court agrees that bottle and breastfeeding an infant can be physically and emotionally demanding, there is no evidence in the record that it was so demanding in this case. Additionally, Court does not find such activity to be an appropriate reason to discount the marked social limitations evaluated by the examining psychologist.

> *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) (quoting
> *Poulin v. Bowen*, 817 F.2d 865, 873–74 (D.C. Cir. 1987)).
> Psychiatric evaluations may appear subjective, especially compared
> to evaluation in other medical fields. Diagnoses will always depend
> in part on the patient's self-report, as well as on the clinician's
> observations of the patient. But such is the nature of psychiatry. *See*
> *Poulin*, 817 F.2d at 873 ("[U]nlike a broken arm, a mind cannot be
> x-rayed.").

*Id.* Thus, the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness.

Additionally, Dr. Portoff made specific findings separate from Plaintiff's subjective reports. Regarding her general appearance and behavior, Dr. Portoff noted that there is "mild psycho-motor slowing." Tr. 554. Her "proceed of thought, as reflected in speech, is coherent, but moderately rambling and mildly tangential." *Id.* Her affect, "as expressed in speech and demeanor, is characterized by moderate, agitated, tearful depression." *Id.* In the discussion/prognosis section of his report, Dr. Portoff stated that Plaintiff "denies any discrete manic episodes, but presents with mixed manic and depressive signs in the current exam." *Id.* Thus, Dr. Portoff made clinical findings that were based on his own observations and not Plaintiff's reported symptoms.

In this case, Dr. Portnoff's opinion was consistent with his own clinical findings and with the medical evidence in the record. The opinion of one reviewing physician is not sufficient evidence to discount his opinion, especially considering the other examining physician's consistent opinion. The ALJ erred by improperly discounting this opinion.

### b. Examining psychologist Scott Alvord Psy.D.

In August 2017, Plaintiff underwent another consultative psychological evaluation, this time with Scott Alvord, Psy.D. Tr 22. Like Dr. Portnoff, Dr. Alvord based his opinion on a review of available records, clinical interview, and mental status examination. Tr. 572. Plaintiff generally

reported a history consistent with that described to Dr. Portnoff and summarized above. Tr. 572-73. She began "sobbing" when discussing her grandmother's death and having discovered the body. Tr. 572. She reported that chronic anxiety and depression impacted her occupational success. Tr. 573. Antidepressant medication had not improved her symptoms; she had never been prescribed a mood stabilizer. Tr. 573. She described having excessive energy and motivation while in high school and the U.S. Navy. Tr. 573. She required less sleep, maintained multiple jobs, and was somewhat impulsive. Tr. 573. However, she had become "perpetually depressed" with brief episodes of excitement. Tr. 573. Current symptoms included lethargy, apathy, inconsistent sleep, inconsistent appetite, and hopelessness. Tr. 573. She also experienced chronic nightmares, flashbacks, emotional numbing, psychological reactivity, and low-grade paranoia. Tr. 573. She did not leave the house for days at a time. Tr. 573. She experienced physical manifestations of anxiety as tachycardia, difficulty catching her breath, sweating, and nausea. Tr. 574. She struggled to keep up with chores, slept excessively, and relied on her spouse to do many household tasks. Tr. 574. She stated, "taking care of my baby is about all I can do." Tr. 574. She had one friend and was otherwise socially isolated. Tr. 574.

Dr. Alvord observed tearfulness, depressed mood, and downtrodden affect. Tr. 574. He noted her working memory was intact, adequate abstract thought and insight, and low average intellectual functioning. Tr. 575. He diagnosed bipolar II disorder, moderate to severe PTSD, and amphetamine abuse disorder in sustained remission. Tr. 575-76. He recommended intensive psychiatric care to address bipolar disorder. Tr. 575. He assessed guarded prognosis and opined that she could manage her own funds. Tr. 575-76. He assessed marked limitation in the ability to interact appropriately with the public and supervisors and respond appropriately to usual work situations and changes in a routine work setting. Tr. 578. He assessed moderate limitation in the

ability to understand, remember, and carry out complex instructions, make judgments on complex work-related decisions, and interact appropriately with coworkers. Tr. 577-78.

The ALJ afforded "limited weight" to Dr. Alvord's opinion. Tr. 22. First, he found Dr. Alvord's "excessive limitations in interacting with others and adapting or managing oneself . . . inconsistent with the record as a whole, including the claimant's limited medical records, her course of medical treatment, and her activities of daily living." Tr. 22. That reasoning fails on the same grounds addressed above. While differing on a few minor details, Dr. Alvord's opinion is similar to and consistent with that of Dr. Portnoff; both examining doctors found marked social impairment—be it in public and supervisor interactions, as Dr. Alvord assessed, or public and coworker interactions, per Dr. Portnoff. Tr. 578, 556. Those opinions do not conflict with Plaintiff's reported activities, as addressed above.

Plaintiff's failure to engage in treatment and, therefore, the absence of treatment notes, cannot constitute substantial evidence inconsistent with these two examining medical source opinions, particularly in light of her uninsured status, Tr. 50, and her testimony regarding the difficulty in travel to the VA hospital in Roseburg. Tr. 67-69

Dr. Alvord did examine Plaintiff. Like Dr. Portnoff, he based his opinion on a review of available records, clinical interview, and mental status examination. Tr. 572. That examination formed the basis for his opinion and cannot be discounted as unsupported by objective measures. *Buck*, 869 F.3d at 1049. The ALJ therefore erred in giving little weight to Dr. Alvord's opinion.

**II. The ALJ did not give proper weight to the VA disability determination.**

Because of the "marked similarity" between the VA and SSA disability programs, "an ALJ must ordinarily give great weight to a VA determination of disability." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002); *see also Luther v. Berryhill*, 891 F.3d 872, 876

(9th Cir. 2018); *McLeod v. Astrue*, 640 F.3d 881, 886 (9th Cir. 2011). However, the VA rating is

"not conclusive and 'does not necessarily compel the SSA to reach an identical result.'" *Luther*,

891 F.3d at 876 (quoting *McLeod*, 640 F.3d at 886). Thus, the "ALJ may give less weight to a

VA rating 'if he gives persuasive, specific, valid reasons for doing so that are supported by the

record.'" *Id.* (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 695 (9th Cir.

2009)).[4]  The ALJ failed to do so in this case.

The VA found Plaintiff entitled to Individual Unemployability for 70% service-connected

PTSD, effective October 29, 2014.3 Tr. 298-99, 324, 326-27. It found that she was "unable to

secure or follow a substantially gainful occupation as a result of service-connected disabilities."

Tr. 299, 327. It found her "totally and permanently disabled due solely to [her] service-connected

disabilities." Tr. 324.

The ALJ assigned "little weight" to the VA disability rating. Tr. 23. First, the ALJ

reasoned that the "justification" for the 70% rating was "unclear." Tr. 23. However, the VA

provided a long list of evidence considered in reaching its decision. Tr. 307-08, 335-36.  Second,

the ALJ rejected the VA disability determination because "[t]he VA did not make a function-by-

function assessment of the claimant's capabilities (i.e., determine the claimant's residual

functional capacity) or determine whether she could perform her past relevant work or other

work that exists in significant numbers in the national economy." Tr. 23. Both of those bases

essentially reject the VA determination merely based on the differences between the two

---

[4] Recently, the applicable regulations were amended such that adjudicators are no longer required to provide any written analysis of disability decisions by other agencies for Social Security disability claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1504 (explaining that for Social Security disability claims filed "on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by another governmental agency or nongovernmental entity about whether you are disabled, blind, employable, or entitled to benefits"). This amendment does not apply here, however, because Plaintiff filed her disability claim before March 27, 2017. Thus, the ALJ was required to consider the VA rating and explain the weight, if any, to assign it under relevant Ninth Circuit precedent.

agencies' disability programs and the form of their findings. That is not a valid basis to reject a

VA disability determination. *Valentine*, 574 F.3d at 695 ("Insofar as the ALJ distinguished the

VA's disability rating on the general ground that the VA and SSA disability inquiries are

different, her analysis fell afoul of *McCartey.*"); *Berry v. Astrue*, 622 F.3d 1228, 1236 (9th Cir.

2010).

Third, the ALJ took issue with the VA's finding that Plaintiff's PTSD was "service

connected" despite her ability to work for fifteen years following her military discharge in 1998,

sometimes at substantial gainful activity levels. Tr. 23. This Court has previously acknowledged

the on-going and sometimes delayed effects of PTSD:

> PTSD is a severe anxiety disorder that can develop after an extreme
> traumatic event that causes psychological trauma. A diagnosis of
> PTSD requires two factors: first, the person must experience,
> witness, or be confronted with an event or events that involved
> actual or threatened death or serious injury, or a threat to the physical
> integrity of the individual or others, and second, the person's
> response must involve intense fear, helplessness, or horror.
> *American Psychiatric Ass'n., Diagnostic and Statistical Manual of
> Mental Disorders* 463–468 (4th ed., text rev., 2000) ("DSM–IV–
> TR"). To be clinically diagnosed with PTSD, a patient must exhibit
> the following symptoms: "numbing of general responsiveness";
> "persistent re-experiencing of the traumatic event"; "persistent
> avoidance of stimuli associated with the trauma"; and "persistent
> symptoms of increased arousal." *Id.* PTSD may only be issued as
> the formal diagnosis if the symptoms cause "clinically significant
> distress or impairment" of major domains of daily life, such as
> occupational activities, social relations, or other "important areas of
> functioning," and only if these effects last for over one month. *Id.*
> Symptoms usually present within three months of the traumatizing
> event, but onset may be delayed, sometimes for many years. *Id.*

*Bradford v. Astrue*, Civ. No. 09-6062-CL, 2010 WL 5648875, at *10 (D. Or. Oct. 26, 2010)

(adopted by District Court on January 25, 2011). In this case, Plaintiff suffered sexual and

domestic trauma both during childhood and in adulthood, as well as during active military duty.

E.g., Tr. 555, 575. Her PTSD symptoms were exacerbated following the death her grandmother,

who raised her in the absence of her mentally ill and drug addicted mother. E.g., Tr. 575, 552, 46-50. The record offers no evidence to support a finding that Plaintiff worked or otherwise functioned at a level that exceeded the VA's 2014 finding that her PTSD became totally and permanently disabling well after her 1998 military discharge.

Finally, the ALJ reasoned that "the medical evidence of record and the claimant's activities of daily living show a functioning level that is consistent with the residual functional capacity above. Given that the residual functional capacity directs a finding of not disabled... I give little weight to the VA rating." Tr. 23. As addressed above, that reasoning is not supported by substantial evidence in the record. In addition, this reasoning "puts the cart before the horse." *Laborin v. Berryhill*, 867 F.3d 1151, 1154 (9th Cir. 2017). "The ALJ assesses a claimant's RFC 'based on all the relevant evidence in [the] case record.'" *Id.* (quoting 20 C.F.R. 416.945(a)(1)). Such evidence includes a VA determination of disability, which is ordinarily due great weight. *McCartey*, 298 F.3d at 1076. Rejecting such evidence because it indicates a higher level of disability than that found in the RFC "inverts the responsibility of an ALJ." *Id.* (quoting *Trevizo*, 862 F.3d at 1000 n.6).

The ALJ therefore erred by failing to give persuasive, specific, valid reasons for discounting the VA disability determination in this case.

## II. The ALJ did not properly evaluate Plaintiff's subjective symptom testimony.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the

severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. *Id.*

In the second stage of the analysis, the ALJ must consider the intensity, persistence, and limiting effects of the alleged symptoms based on the entire record. SSR 16-3p at *7-8. The ALJ will consider the "[l]ocation, duration, frequency, and intensity of pain or other symptoms" reported by the claimant, any medical sources, and any non-medical sources. *Id.* The ALJ's decision must contain "specific reasons for the weight given to the individual's symptoms, be consistent with and support by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* Additionally, the evidence upon which the ALJ relies must be substantial. *See Reddick*, 157 F.3d at 724; *Holohan v. Massinari*, 246 F.3d 1195, 1208 (9th Cir. 2001); *Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991). The ALJ must also "state specifically which symptom testimony" is being rejected and what facts lead to that conclusion. *Smolen v. Charter*, 80 F.3d 1273, 1284 (9th Cir. 2009) (citing *Dodrill*, 12 F.3d at 918). In rejecting claimant's testimony about the severity of her symptoms, the ALJ must give "specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1029, 1036 (9th Cir. 2007)).

At the hearing, Plaintiff's testimony was consistent with the history she provided to Dr. Portoff and Dr. Alvord. She testified that her grandmother raised her. Tr. 48. She was living with her grandmother at the time of her death. Tr. 48. She was prescribed Gabapentin at the time but had not engaged in therapy for about a year. Tr. 49. She was not medically insured at the time. Tr. 50. She engaged in therapy for PTSD from 2005 to 2010, which helped her learn coping skills. Tr. 61. However, she continued to struggle with being around others despite therapy. Tr. 62. She had

difficulty working at a car dealership; her coworkers thought she "was a little bit crazy," and she was "scared to death to work there because [she] was scared of people." Tr. 62. She was never comfortable selling cars and tended to say the wrong thing or overshare with customers. Tr. 63-64. She was terminated after taking time off work to transport her grandmother to the hospital. Tr. 46-47. However, she "wasn't selling any cars" and believed her employer was looking for a reason to fire her. Tr. 47. She was homeless for two years following her grandmother's death. Tr. 66.

Plaintiff testified to frequent depression symptoms and lifelong impulsivity. Tr. 54. Although a potential bipolar diagnosis had been suggested in the past, she did not "want to think about that because [her] mom had it and she [was] nuts." Tr. 55. At the time of the hearing she was interested in treatment. Tr. 56. However, she testified to difficulty traveling to Roseburg for VA mental health services. Tr. 67-69. She had been sexually assaulted in the military. Tr. 72-73. She was sent to the "psycho department" after the assault. Tr. 73. She began to experience anxiety symptoms following the assault. Tr. 74. She was discharged; the military recorded the basis for her discharge as "personality disorder" to "help [her] get out faster." Tr. 71-72. At the time of the hearing, Plaintiff had four children, but only one was in her care. Tr. 51. She lived in a house with her husband and child. Tr. 56. Her husband had renal failure, a history of substance abuse, and was "a little schizo." Tr. 59.

The ALJ determined that Plaintiff established severe mental health impairments including PTSD and bipolar disorder, which could reasonably have produced some degree of the symptoms she alleged. Tr. 19. However, he also found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." Tr. 19. The reasons given by the ALJ for discounting Plaintiff's testimony are not convincing.

First, the ALJ notes that despite her level of depression and anxiety and related PTSD-type symptoms, "she repeatedly declined to see a psychiatrist because her symptoms were medically managed." Tr. 20. The ALJ cited to two exhibits, 3F and 10F/4, and "hearing testimony." A review of those exhibits shows that while Plaintiff did indeed decline to seek psychiatric care at times (ex. 3F, Tr. 511-512), she also engaged in psychiatric care at other times (ex. 10F, Tr 584-682). There is no evidence in the record that the times she declined care she did so "because her symptoms were medically managed." Instead, the evidence in the record shows that she, like many people who suffer from mental illnesses, did not want to admit the full extent of her illness and wanted to avoid the stigma of a diagnosis. Tr. 55 ("I didn't want to think about [having bipolar disorder] because my mom had it and she's nuts."). She also testified that she lacked the resources to seek care because she did not have insurance, tr. 50, and was not able to travel to the VA hospital in Roseburg. Tr. 67-69.

The ALJ next points to the lack of medical records around the time of her alleged onset date. Tr. 20. However, the lack of treatment records is the reason the agency ordered the consultative medical examinations by Dr. Portoff and Dr. Alvord, both of which confirmed the Plaintiff's bipolar disorder diagnosis and disabling symptoms. Additionally, the VA determination supports Plaintiff's claim of disabling PTSD symptoms dating back to the alleged onset date.

Finally, the ALJ took issue with the fact that Plaintiff "cared for her infant child and spouse." Tr. 21. As discussed above, this is not an appropriate reason to discount Plaintiff's testimony because there is no evidence in the record as to what that care entailed and whether or not it is consistent with her subjective symptoms. *Trevizo v. Berryhill,* 871 F.3d 664, 682 (9th Cir. 2017) ("the mere fact that [the claimant cared] for small children [did] not constitute an adequately specific conflict with her reported limitations.").

**REMAND**

Within a court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding. *Garrison*, 759 F.3d at 999. The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true because the ALJ made a legal error. *Id.* at 408.

Here, the ALJ erred by improperly discounting the medical opinions of Dr. Portoff and Dr. Alvord, by improperly discounting the VA's disability rating, and by improperly discounting Plaintiffs subjective symptom testimony. All three of these categories of evidence are consistent

with each other, and provide substantial support for one another in the record, and all three are consistent with the record as a whole. The Court cannot discern any other conflicts or ambiguities in the record and does not see any useful purpose in further proceedings.

When presented with the hypothetical restrictions consistent with the evaluations of Dr. Portoff and Dr. Alvord, the Vocational Expert testified that "there would be no competitive work" for someone who had inappropriate interactions with a supervisor. Tr. 84. Additionally, the VE testified that there would be no competitive work for "a person who had difficulty due to psychological symptoms attending work some days, and so would be absent due to mental health symptoms." Tr. 82. Thus, the record has been fully developed and there are no outstanding issues left to be resolved. The Court finds that the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence, as discussed above, were credited as true.

## ORDER

Based on the foregoing, the Court exercises its discretion and orders that the decision of the Commissioner is REVERSED and REMANDED for an immediate payment of benefits.

IT IS SO ORDERED and DATED this ___ day of December, 2019.

MARK D. CLARKE
United States Magistrate Judge